RAY AND VIRGINIA RUSSELL, PLAINTIFFS AND RESPOND-
ENTS, *v.* THALE RUSSELL, DEFENDANT AND APPELLANT.

No. 11519.
Submitted Feb. 10, 1969.
Decided March 12, 1969.
Rehearing Denied April 2, 1969.
452 P.2d 77.

462

John V. Potter, Jr. (argued), White Sulphur Springs, for appellant.

Richard Conklin (argued), White Sulphur Springs, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Plaintiffs brought this action against defendant-appellant seeking money due on a settlement of accounts, wages due, recovery of money paid for an option to purchase based on fraud, and conversion of gasoline. Plaintiffs' fourth claim, being that of conversion of gasoline, was dismissed by the court and the other three claims were submitted to the jury. The jury returned a general verdict against the defendant for $4,765.54.

From the record it appears that the defendant, Thale Russell, was the owner of a bar and restaurant located 13 miles north of White Sulphur Springs, Montana. After the death of her husband in the spring of 1964, she entered into a "Memorandum of Agreement" with the plaintiffs, her brother-in-law and his wife, Raymond and Virginia Russell, to sell them the bar and restaurant properties, together with a motor patrol. Pursuant to this initial agreement, defendant, on October 8, 1964, executed a written and acknowledged "Option to Purchase Real and Personal Property" covering the bar and restaurant properties, for which she received on March 26, 1965, (time apparently not being of the essence as it was a "family affair") $4,000 cash consideration from the plaintiffs. Plaintiffs had taken possession of the bar and restaurant on October 1, 1964, and operated them until the morning of January 1, 1966. The option by its terms expired December 31, 1965.

So far as this appeal by defendant from the judgment entered on the jury verdict is concerned, plaintiffs sought the return of the $4,000 paid for the option, with interest, basing their claim on fraudulent misrepresentation or concealment of facts by the defendant.

The plaintiffs' evidence in support of their allegations of fraudulent misrepresentation and concealment by the defendant consisted of testimony by one Wayne LeBaron, county sanitarian at the time involved. LeBaron testified that on July 8, 1964, he, together with Lyle Fisher, consultant to the State Department of Public Health, inspected the premises in ques-

tion; that he found that liquid wastes drained to ground surface; that at the time an inspection report was given to Thale Russell indicating the violation; and, that he was quite sure that he or Mr. Fisher warned her the violation was serious and should be corrected. Defendant denied any such warning was given.

When the plaintiffs occupied the premises it was under an employment agreement which provided for wages of $200 per month for the plaintiffs as well as 75% of the net profits, the other 25% going to the defendant. This employment agreement was later replaced by another agreement, signed in February 1965, which provided for wages of $350 per month, the profits going to the defendant. Defendant testified that the second agreement was entered into in order to ''satisfy'' the Montana State Liquor Control Board; it appeared that in January 1965 the Liquor Control Board informed the defendant that Montana law prohibited anyone who had not been a Montana resident for 12 months from sharing in the profits from operating under or owning a Montana retail liquor or beer license. The defendant also testified it was never the intention of any of the parties that the contracts should have any effect, they were a mere guise to satisfy the Liquor Control Board and circumvent the Montana statutes. However, the plaintiffs contended that under the contracts they were entitled to $4,650 in wages.

In late 1965 the State Board of Health warned the plaintiffs that unless corrections were made in the water supply and sewage disposal systems licenses would not be issued for 1966. Plaintiffs contend this was the first indication they had that the systems did not meet State Board of Health standards.

In response to the warnings from the State Board of Health the plaintiffs called a licensed plumber to the premises but he refused to correct the sewage drainage problem. He based his refusal on his discovery that the septic tank, the drain field through which the septic tank drained, and the culvert

through which the open sewage ran, were not on the property of the plaintiffs or defendant. From the record it appeared they were on property which was subject to an easement held by the Skelton family. It was apparently at this time that the plaintiffs decided not to exercise their option and to seek return of the option money instead.

Defendant asserts the court erred in refusing to dismiss plaintiffs' claim of fraud and allowing the issue of fraud to go to the jury. We think the issue of fraud was properly submitted to the jury in light of the testimony of the plaintiffs and Mr. LeBaron.

Whether or not there has been fraud in any given case is generally a question of fact. It is often said to be peculiarly a question for the jury, in cases in which a jury trial may be had, and that it should be submitted to them if there is substantial evidence to support a finding of its existence. See: Healy v. Ginoff, 69 Mont. 116, 220 P. 539 (1923); Riley v. Byrne, 145 Mont. 138, 399 P.2d 980 (1965).

Defendant further contends that the plaintiffs' evidence and proof failed to make out a prima facie case of fraud. Defendant relies on the case of Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 207 P. 623 (1922), in which this Court set forth nine elements of *actual fraud* which were (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

We do not think the instant case was one of actual fraud so that the above nine elements would apply. We think, instead, it was a concealment, more in the nature of a constructive fraud.

Section 13-309, R.C.M.1947, states:

"Constructive fraud consists: * * * (2) In any such act or

omission as the law especially declares to be fraudulent without respect to actual fraud.''

We think in was a fraudulent act on the part of the appellant to withhold information on the warning she had received from the State Board of Health.

''* * * fraud is complete where a vendor knowingly suppresses a serious vice of his property which the vendee had no reason to suspect.'' Burkett v. J. A. Thompson and Son, 150 Cal.App.2d 523, 310 P.2d 56 (1957).

Defendant also contends the court below should have decided as a matter of law that the plaintiffs could not recover. To support that contention she asserts the uncontroverted evidence shows plaintiffs made and relied on their own inspection and there was full disclosure by the defendant. We cannot agree the evidence shows that to be true.

It is only ''* * * when no substantial evidence has been introduced by the party upon whom the burden rests, [that] a question of law for decision by the court is presented.'' Lee v. Stockmen's Nat. Bank, 63 Mont. 262, 285, 207 P. 623, 630 (1922).

''The better and improved rule is * * * [to see] whether there is any [evidence] upon which a jury can, in any justifiable view, find for the party producing it * * *. Whether there is any substantial evidence in the case made by the party upon whom the burden rests is always a question of law. If there is not, the court ought to withdraw the case from the jury and direct judgment.'' Escallier v. Great Northern Ry. Co., 46 Mont. 238, 127 P.458 (1912).

Viewing the evidence in the light most favorable to the successful party below, as we must on an appeal, we think there was substantial evidence in support of the alleged fraud and there was not full disclosure by the defendant.

The plaintiffs were shown where the sewage flowed to ground surface but did not rely on their inspection. They relied on the statement of the defendant that if the plaintiffs had

trouble they might have to take a shovel and dig around. She did not make a full disclosure and inform the plaintiffs the situation must be corrected in order to meet the State Board of Health Standards. The court did not err in sending the case to the jury.

Defendant further contends the defects, if any, were not sufficiently substantial or material to justify plaintiffs' rescission. It is clear from the record that easements would have to be secured in order to correct the drainage problem. It is also clear from the record that because easements would have to be secured the value of the land dropped $10,500 within two months after the plaintiffs' option expired (the purchase price to the plaintiffs was $20,500; the property eventually sold in February, 1966 for $10,000). In view of the facts —that one of the eventual purchasers was also the owner of the land over which an easement would have been necessary (which also meant he would not have to make any outlay for the easement) and, that he and the other purchasers were only willing to pay $10,000 for the property, we feel that the record shows the defects to be substantial.

Defendant's next contention is that the trial court should have given an instruction setting forth the nine elements required for proof of actual fraud. As said before, this was not a case of actual fraud and there was no need to give such an instruction.

Defendant's last contention is that the trial court erred in submitting the case to the jury on a general verdict, thereby confusing the several separate claims of plaintiffs, and in refusing to correct such verdict after it was returned.

The court instructed the jury the claim for 200 gallons of gasoline must fail for insufficient evidence. The court also instructed the jury that on the money due on settlement of accounts the defendant was entitled to set off $1,085 against the plaintiffs' claim of $1,157.21, leaving a balance of $72.21

due plaintiffs. Subtracting $72.21 from the general verdict of $4,765.54 we arrive at a balance of $4,693.33.

The other claims in the suit were for return of the $4,000 option money and $4,650 for alleged wages due. The court instructed the jury if they found plaintiffs were entitled to the return of their option money then they were entitled to the full $4,000 plus 6% interest or nothing at all, making a total of $4,693.33, which is exactly what the jury awarded.

On the other hand, the court also instructed the jury if they found wages to be due the plaintiffs, then they, the jury, must also award 5% of the total amount of wages due as a penalty under Montana law, as well as one-third of the amount of wages and penalty due, not to exceed $1,000, as reasonable attorney fees. Roughly calculating that instruction it is apparent on the wages claim the jury would have had to award in excess of $5,500. However, the verdict was for $4,693.33, just what it should have been under the option instruction. We do not think that the jury was confused nor do we think the trial court erred in refusing to correct the general verdict.

For the foregoing reasons the judgment is affirmed.

MR. JUSTICES CASTLES, JOHN C. HARRISON, HASWELL and BONNER, concur.