No. 79-81

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

SHERWOOD MOSCHELLE and BARBARA MOSCHELLE,

Plaintiffs and Respondents,

vs.

GUY HULSE and HELEN HULSE,

Defendants and Appellants.

Appeal from:  District Court of the Fifth Judicial District,
              In and for the County of Madison.
              Hon. Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        R. T. Garrison, Virginia City, Montana
        Chester Lloyd Jones, Virginia City, Montana
        Morrow, Sedivy, Olson and Scully, Bozeman, Montana

    For Respondents:

        Goetz and Madden, Bozeman, Montana

                              Submitted:  May 30, 1980

                              Decided:  August 27, 1980

Filed:  AUG 27 1980


                    _Thomas J. Kearney_
_____
                    Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The defendant sellers appeal the judgment of the Madison County District Court which permitted rescission of a contract for purchase of the defendants' bar in Virginia City. The central issue is whether there is substantial evidence to support the trial court's determination that the defendants made misrepresentations of fact which constituted constructive fraud within the meaning of section 28-2-406, MCA, so as to entitle the plaintiffs to rescission of the contract. The sellers contend that any misstatements made to plaintiffs were nothing more than sales talk or puffing and that they did not attempt to deliberately mislead the plaintiffs.

Defendants raise several issues directed at the right of the plaintiffs to seek rescission. First, they contend that a reasonable investigation by the plaintiffs would have led them to the facts relevant to the transaction. Second, they contend that the misrepresentations were not material and that the plaintiffs should be confined only to seeking damages. Third, they contend that by waiting nine months after the inception of the contract to bring the action for rescission, the plaintiffs either waived their right or are barred by laches. The laches argument is raised for the first time on appeal. Fourth, they contend that the plaintiffs were in default on their contract payments at the time they elected to rescind and that this prevents them from availing themselves of the rescission remedy. We affirm the judgment.

Contact with the defendants in relation to selling their Tavern Bar in Virginia City, was initiated in October 1975. At that time, plaintiff Barbara Wilkins (later to

become Barbara Moschelle) and her then fiance, Kevin McGuinn, met with defendants Guy Hulse and Helen Hulse, to discuss the possible purchase of the tavern. The defendants showed plaintiff Barbara Wilkins their business income records for the month of July 1975 and a tax form apparently indicating the defendants' gross income for 1974. Defendants told plaintiff Wilkins that income from the tavern during the winter months was slim, but defendants refused her request to see records of their earnings during the winter months of that year. Plaintiff Wilkins and her fiance deposited $2,000 earnest money but did not proceed with the transaction and forfeited most of this sum. Plaintiff Wilkins, however, remained interested in purchasing the tavern. She interested her new husband, Brent Moschelle, in purchasing the tavern.

In August 1976, Brent and Barbara Moschelle negotiated with the defendants to purchase the tavern. The defendants again refused to permit the plaintiffs to inspect their business records, but Helen Hulse assured them that earnings during the winter months would allow them to make payments and earn living expenses. The defendants also told the plaintiffs that income from the Labor Day holiday alone would be sufficient to make one or two monthly payments. These statements, it later turned out, were not entirely accurate; indeed, they were more than a little misleading.

Defendants also made several representations to the plaintiffs concerning the condition of the premises, and the plaintiffs later found them to be false. Helen Hulse told the plaintiffs that although the building was 100 years old, it was in good condition. Guy Hulse told plaintiff Brent Moschelle that he had installed wiring in the building.

Defendants also told plaintiffs that the tavern was connected to the city sewer system.

On August 20, 1976, the parties executed a contract calling for a purchase price of $62,000. The down payment was $13,000 with payments to be $440 per month. On the same day, the plaintiffs paid the down payment and assumed possession of the tavern.

Shortly thereafter, the plaintiffs' problems started. In the fall of 1976, the refrigerator and cooler stopped operating, and the stove blew up. Plaintiff Brent Moschelle then looked at the wiring in the building and discovered loose wires hanging outside the building. As it appeared to be old, Brent hired an electrician to examine the wiring. The electrician determined that the wiring was very old and that to bring the building up to standard it was necessary to rewire the entire building. Plaintiffs, nonetheless, continued to operate the tavern and made monthly payments in October and November 1977.

Business was very poor during the winter months. It was necessary for plaintiff Brent Moschelle to borrow money from his mother to make the December payment. This was the third and final payment made by the plaintiffs, as the tavern income was so poor in January that they could not make the January payment from business earnings.

More problems arose in March 1977. The plaintiffs found that the tavern foundation was in extremely bad condition. When the pipes in the women's bathroom froze, Helen Hulse told plaintiff Brent Moschelle about a trapdoor leading to a crawl space in the basement. Brent Moschelle proceeded to look at the floors from underneath. He found that three floors had been built one upon another, and that the joists supporting the bathroom floor had rotted. A

-4-

professional contractor inspected the building and determined that it would cost approximately $20,000 to bring the building up to standard.

In the same month, the sewer line backed up and flooded the basement with four to five feet of water. This flooding shorted out the generator, cooler and lights, and forced the plaintiffs to shut down the business. It was then that plaintiff Brent Moschelle first learned that the tavern was not directly connected with the city sewer system. Indeed, over 200 feet of 100-year-old pipe had apparently frozen solid as the water could not be pumped out of the basement to free the line. The line remained blocked even after using an electric roto machine, chemicals, and air blaster. This was the final straw. The plaintiffs closed the business and did not reopen. Later in the spring (although the business was not then open) seepage from ground water above the tavern caused more flooding in the basement.

The primary thrust of the defense is the contention that no constructive fraud was committed because they did not attempt to deliberately mislead the plaintiffs. In this same vein, defendants contend that plaintiffs did not make reasonable inquiry of the condition of the premises or the income of the business, and that such inquiry would have given them all the information they needed to know. This argument, however, overlooks the crux of the trial court's determination that constructive fraud was committed within the statutory meaning of section 28-2-406, MCA. This statute provides that constructive fraud applies to "any breach of duty which, without fraudulent intent, gains an advantage to the person in fault . . . by misleading another to his prejudice." (Emphasis added.) Dishonesty of purpose or intent to deceive is not a requirement under this statute.

Other jurisdictions hold that constructive fraud is invoked as a matter of law to prevent a party from being unjustly enriched as a result of false statements made, even if the deception is not knowingly made. See Olitkowsky v. St. Casimir's Saving & Loan Ass'n. (Mich. 1942), 302 Mich. 303, 4 N.W. 2d 664; Hernig v. Harris (N.J. 1934), 117 N.J. Eq. 146, 175 A. 169. See also 37 C.J.S. Fraud §2(c)(1), at 211, et seq.

Although the record does not clearly establish actual fraudulent intent on the part of the defendants, there can be no doubt that their representations concerning the subject of the sale amounted to constructive fraud. Several of their statements were misleading on their face and thus required further elaboration so as not to give the plaintiffs the wrong impression. Helen Hulse told the plaintiffs that the building was in good condition, but the defects which plaintiffs later discovered showed that further repairs were needed to bring the building up to standard. Guy Hulse told plaintiff Brent Moschelle that he had installed new wiring in the building. He neglected to tell him that he had done so more than thirty years before. The cost to bring this wiring up to standard was estimated at $3,259.30. Helen Hulse told plaintiff Brent Moschelle that the tavern was connected to the city sewer system, but she neglected to tell him that he would be responsible for the maintenance of 200 feet of 100-year-old pipe which ran between the tavern and city line. Guy Hulse showed plaintiff Brent Moschelle a sump pump which was used to pump water out of the basement in emergencies. He told Brent that the toilet had backed up on one occasion and caused the basement to flood. He neglected to tell Brent that the tavern was subject to seasonal

flooding from high ground water seepage.

The defendants made misleading statements to the plaintiffs concerning the profitability of the tavern. Helen Hulse told the plaintiffs that business earnings would provide sufficient income to make contract payments and to pay the plaintiffs' living expenses. Records for the year 1975, obtained through discovery, revealed cash flow was so low during the winter months that it was necessary to depend upon excess earnings from the summer months to meet all the winter expenses. In January, February, and March 1975, tavern income available for contract payments, repairs and payroll averaged less than $500 per month. Average monthly income during these months was not sufficient to make contract payments, much less provide a minimal standard of living for the plaintiffs. Plaintiffs themselves were faced with this pattern of low winter income in 1977 when they were forced to borrow money to keep up the contract installments.

Additional facts were misstated concerning the high volume of Labor Day trade. Helen Hulse testified she told plaintiffs that Labor Day business would be good enough to make several payments under the contract. The plaintiffs could not remain open on Labor Day weekend, however, because trouble arose with motorcycle gangs and the lack of police protection. Helen Hulse did not deny the plaintiffs' testimony that she had failed to tell them she also had been forced to close on Labor Day weekend because of trouble with motorcycle gangs.

The defendants' statements cannot be excused simply because deliberate misstatements may not have been proven. The facts indicate a pattern of repeated concealments of the true state of affairs concerning the condition of the premises and probable business earnings. Withholding relevant acts

concerning purchased property can be a fraudulent act. See Russell v. Russell (1969), 152 Mont. 461, 452 P.2d 77. Furthermore, where a vendor by his conduct or words creates a false impression concerning a matter of vital importance to the purchaser, full disclosure of relevant facts may be required. See Twing v. Schott (Wyo. 1959), 80 Wyo. 100, 338 P.2d 839; 12 Williston on Contracts (3rd. ed.) §1498, at 387; Restatement of Contracts §472(1)(b), Comment b.

Under the facts here, the defendants were under a duty to make such disclosures as would erase the false impressions created in the minds of the plaintiffs that repairs to the premises were not needed and that winter earnings were sufficient for the plaintiffs' needs.

Defendants argue that relief should not have been granted to the plaintiffs because they could have discovered, by their own investigation, facts relevant to the transaction. Although it is true that the conduct of the purchaser in making inquiry into the condition of the premises and income status of the business cannot be overlooked, Hardin v. Hill (1967), 149 Mont. 68, 73, 423 P.2d 309, 312, we cannot say that the purchasers here should be denied relief. The major defect in the premises was its rotted floor and foundation. The rotting was particularly bad under the cafe portion of the building where the defendants had patched it. The rotted foundation could be detected only by entering a crawl space under the floor. Although it appears that Brent Moschelle noticed the patched floor, he did not enter the crawl space. The defendants knew that the foundation was rotten. At trial a contractor testified that it would require almost $20,000 to repair the rotted floor and foundation. The defendants knew that the floors and foundations required repair but did not inform the plaintiffs of this.

Brent Moschelle had no experience in carpentry and indeed did not discover the location of the trapdoor leading to the crawl space until March 1977.

Nor can we accept the defendants' arguments that the plaintiffs had no right to rely on their representations concerning the winter earnings of the tavern business. Plaintiffs had never before invested in real estate. The defendants prevented them from obtaining an accurate picture of the tavern's earning potential for the winter months. Helen Hulse refused the plaintiffs' request to look at the books, and in fact, even objected to the plaintiffs making inquiry around town as to the income of the tavern. Given these circumstances the plaintiffs had little choice but to take the defendants at their word that the winter business was sufficient for the plaintiffs' needs.

Defendants also argue that their misrepresentations were not material to the contract and thus that rescission should not have been granted. See Johnson v. Meiers (1946), 118 Mont. 258, 164 P.2d 1012. Defendants argue that damages are a sufficient remedy to compensate the plaintiffs. There is no doubt, however, that the misrepresentations directly relate to the condition of the premises. Testimony established that it would require over $27,000 in repairs to upgrade the tavern to a satisfactory condition. The rotted floors and foundations, the decrepit wiring, and the seasonal flooding amount to major problems, and the process of making repairs would probably result in a prolonged period that the tavern would not be open for business. Damages under these circumstances would be clearly inadequate.

Defendants next argue that the plaintiffs waived their right to rescind, or were guilty of laches, in waiting almost nine months to act. The decaying foundation and the age of the wiring were not readily observable to plaintiffs

as inexperienced laymen. The major defects in the premises did not surface until March 1977. Almost immediately thereafter, plaintiffs consulted a lawyer. Upon the advice of a lawyer, they stopped payments on the contract and sent notice of rescission to the defendants. We do not find a waiver under these facts.

The laches argument must fail because the defendants did not plead this as an affirmative defense at the trial as is required by Rule 8(c), M.R.Civ.P. Defendants cannot now raise this argument for the first time upon appeal. See Elliston Lime Co. v. Prentice Lumber Co. (1971), 157 Mont. 64, 483 P.2d 264; Bull Creek Oil & Gas Development v. Bethel (1953), 127 Mont. 222, 258 P.2d 960.

Finally, defendants argue that plaintiffs have no right to rescission because they defaulted on the purchase contract. We first note that when plaintiffs gave notice of rescission, they were still within the grace period permitted by the express terms of the contract for curing default on payments.

In making a decision to rescind rather than bring the payments up to date, the plaintiffs did not waive. It would be incongruous to hold that when the plaintiffs decided to rescind rather than to bring the payments up to date, they therefore waived their right to rescind. It would, essentially, leave them without a remedy. We note, furthermore, that a vendor's fraud vitiates the contract from its inception, and thus, even a purchaser in default may seek rescission. See Gamble v. Beahm (Ore. 1953), 198 Or. 537, 257 P.2d 882, 886; Thompson v. Huston (Wash. 1943), 17 Wash.2d 457, 135 P.2d 834, 837. Also see, 91 C.J.S. Vendor & Purchaser, §168 at 1126.

The judgment granting rescission is affirmed.

_____
                    Justice

We concur:

_____
              Chief Justice

_____

_____

_____
                    Justices