No. 96-678

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


JACK MATTINGLY,

Plaintiff and Appellant,

v.

FIRST BANK OF LINCOLN, GERRY MALEK, d/b/a MALEK
REALTY; and AUGUST "GUS" HABETS,

Defendants and Respondents.



APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

David K. W. Wilson, Jr., and Jonathan Motl; Reynolds, Motl
and Sherwood; Helena, Montana

For Respondents:

Gary L. Davis; Luxan & Murfitt; Helena, Montana
(for Respondent First Bank Lincoln)



Submitted on Briefs: June 12, 1997

Decided:   October 28, 1997
Filed:


_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

In July 1993, plaintiff and appellant Jack Mattingly filed an action in the District Court for the First Judicial District in Lewis and Clark County against First Bank of Lincoln, real estate agent Gerry Malek, and August Habets to recover damages incurred in connection with the 1987 purchase and sale of a service station located in Lincoln, Montana. Mattingly brought suit alleging that at the time he purchased the service station from Habets, the defendants, including First Bank through whom Mattingly obtained financing, knew of underground contamination on the service station property but failed to disclose its presence.

Mattingly asserted claims against First Bank for constructive fraud, negligence, and negligent misrepresentation, and punitive damages. First Bank subsequently filed a motion for summary judgment, which the District Court granted in a June 2, 1995, order. Mattingly timely filed a motion to alter or amend pursuant to Rule 59(g), M.R.Civ.P., arguing the court had improperly overlooked a number of issues of material fact. On August 11, 1995, the District Court denied Mattingly's motion to alter or amend. Mattingly appeals the decision of the District Court granting First Bank's motion for summary judgment. For the reasons discussed below, we reverse.

We find the following issues dispositive on appeal:

1. With respect to Mattingly's claim for negligent misrepresentation, did the District Court err in finding that First Bank made no representation to Mattingly upon which he might rely to his detriment?

2. With respect to Mattingly's claim for constructive fraud, did the District Court err in finding no special circumstances giving rise to a duty on the part of First Bank to disclose to Mattingly any information it may have had regarding the contamination?

3. With respect to Mattingly's claim for constructive fraud, did the District Court err in finding that First Bank gained no advantage by failing to disclose the presence of the contamination?

4. Did the District Court err in granting First Bank's motion for summary judgment on Mattingly's claim for punitive damages?

FACTUAL BACKGROUND

In July 1983, while installing a new sewer line on the south side of Highway 200 in Lincoln's city center, a construction crew discovered a pocket of gasoline floating on the groundwater at a depth of six feet. Further investigation by the Water Quality Bureau (WQB) and the Montana Department of Health and Environmental Sciences (DHES) indicated that petroleum leaking from underground storage tanks at three gasoline retail businesses operating at the main intersection of Highway 200 and Stemple Pass Road had contaminated approximately 1.4 acres of land in the area. One of the three service stations involved, "Gus's Exxon," was owned at the time by Habets.

In 1986, at the behest of the WQB, Stiller and Associates completed a study (Stiller report) which confirmed the presence of gasoline contaminated groundwater in the quarter mile area stretching westward from the main intersection location of the three gasoline service stations. Following various press accounts of the spill, and by virtue of the fact that Lincoln is a small community, general knowledge of the contamination became widespread throughout the Lincoln area, and within the First Bank organization itself. Indeed, First Bank's property rested in such close proximity to the contaminated area that, as a part of its initial investigation in 1983, DHES sought permission from then bank president Susan Hemmer to excavate on the bank's property near the "leading edge of the plume."

In May 1987, Habets listed "Gus's Exxon" for sale with Malek's real estate brokerage firm. Later that same month, Mattingly entered into a contract with Habets pursuant to which he agreed to purchase the station for $79,000, contingent upon his ability to obtain institutional financing. Habets did not disclose to Mattingly that the property had been contaminated.

Mattingly then met with First Bank Vice-President Joe Dolan to inquire about obtaining a loan for the purchase of the property. At the time of Mattingly's loan application, First Bank had a loan committee comprised of all the bank's board members. Among the committee's more active members were bank president Hemmer, as well as director and shareholder John Mulcare. Mulcare also owned and operated Handi-Mart, located across the street from the station purchased by Mattingly, and one of the three stations identified as a source of the contamination. Mulcare knew of the contamination, as evidenced by his attendance at a November 24, 1984, meeting with DHES officials during which they explained the potential liability all three station owners faced due to the contamination. Moreover, Mulcare obtained a copy of the 1986 Stiller report which apportioned probable partial responsibility for the contamination to Mulcare's Handi-Mart, as well as to Gus's Exxon.

Prior to approving loans on commercial real estate, First Bank made it a practice to conduct some form of appraisal of the property to determine its value. First Bank did not require a formal written appraisal in this case because of Mattingly's large down payment on the property. Instead, prior to First Bank's approval of Mattingly's loan request, Dolan conducted a physical inspection of the service station property to obtain an impression regarding its value for the purpose of determining whether First Bank would be secure in its loan. At the time of the inspection, Dolan was aware of contamination in the area.

First Bank's loan committee met on June 8, 1987, to determine whether to approve Mattingly's loan request. All of the loan committee members, including Hemmer and Mulcare, were aware of the contamination. Mulcare, who had direct knowledge of the

contamination, did not mention the contamination issue and abstained from discussing or voting on the loan request because Mattingly was a business competitor. Hemmer, who had direct knowledge of the contamination but did not know of the Stiller Report, also remained silent with respect to the issue of contamination. Dolan, who was relatively new to the Lincoln area, possessed only general knowledge of the contamination. He did not know of the Stiller Report, and essentially relied on other bank board members for information regarding the community. Without any discussion of the contamination present on the property in question, the committee approved Mattingly's loan request in the amount of $56,000. Closing took place at First Bank's Lincoln office on June 22, 1987. None of the documents associated with the transaction, including the buy-sell agreement, contained any disclosure of the contamination.

After taking possession of the property, Mattingly wanted to remodel and expand his business, so he applied with First Bank to obtain a second loan in the amount of $127,000. After meeting on August 17, 1987, First Bank's loan committee denied Mattingly's application. Mattingly subsequently obtained an SBA-guaranteed loan in the amount of $105,000 through Norwest Bank in Great Falls. Mattingly used the loan money to pay the remaining balance on the loan from First Bank, and to remodel the service station.

Mattingly first learned of the contamination in July 1991 when he was in the process of selling his property. That sale fell through due to the contamination, which has since prevented Mattingly from selling the property. In a letter dated July 9, 1992, the DHES first informed Mattingly of his potential liability for the clean up of the contamination.

Mattingly filed this suit against Habets, Malek, and First Bank in July 1993. In his second amended complaint, filed December 13, 1993, Mattingly alleged claims against Habets for actual fraud, negligent misrepresentation, violation of Montana's hazardous waste law õ 75-1-715(6)(d)(ii), MCA, and for punitive damages. Mattingly brought claims against Malek for actual fraud, negligent misrepresentation, violation of his statutory duty as a real estate licensee pursuant to õ 37-51-321, MCA, and punitive damages. Finally, Mattingly brought claims against First Bank for constructive fraud, negligence, negligent misrepresentation, and punitive damages.

Mattingly subsequently settled his claims with Malek, and Habets signed a confession of liability on December 22, 1995. On March 1, 1996, the court issued an order of liability, finding Habets liable for breach of contract, negligent misrepresentation, and violation of õ 75-10-715(6)(d)(ii), MCA. Following a nonjury trial on the issue of damages, the District Court issued an order finding Habets liable for actual damages in the amount of $435,000. On September 20, 1996, the court entered a final judgment in this case, incorporating its prior order granting summary

judgment
in First Bank's favor.  Mattingly appeals.

                              DISCUSSION

     This Court's standard of review in appeals from summary judgment rulings is de
novo.  Treichel v. State Farm Mut. Auto. Ins. Co. (1997), 280 Mont. 443, 446, 930 P.2d
661, 663. (citing Motarie v. Northern Montana Joint Refuse Disposal Dist. (1995), 274
Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc.  (1994), 264 Mont. 465, 470,
872 P.2d 782, 785).  This Court reviews a summary judgment order entered pursuant to
Rule 56, M.R.Civ.P., based on the same criteria applied by the district court.  Treichel,
280 Mont. at 446, 930 P.2d at 663 (citing Bruner v. Yellowstone County (1995), 272
Mont. 261, 264, 900 P.2d 901, 903).

     In proving that summary judgment is appropriate:

     The movant must demonstrate that no genuine issues of material fact exist.
     Once this has been accomplished, the burden then shifts to the non-moving
     party to prove by more than mere denial and speculation that a genuine
     issue does exist.  Having determined that genuine issues of material fact do
     not exist, the court must then determine whether the moving party is
     entitled to judgment as a matter of law.  [This Court] reviews the legal
     determinations made by the district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903.

     Moreover, the "moving party has the burden of showing a complete absence of any
genuine issue as to all facts considered material in light of the substantive principles that
entitle the moving party to judgment as a matter of law and all reasonable inferences are
to be drawn in favor of the party opposing summary judgment."  Kolar v. Bergo (1996),
280 Mont. 262, 266, 929 P.2d 867, 869.

                               ISSUE 1

     With respect to Mattingly's claim for negligent misrepresentation, did the District
Court err in finding that First Bank made no representation to Mattingly upon which he
might rely to his detriment?

     This Court has adopted the definition of negligent misrepresentation set forth in
the Restatement (Second) of Torts õ 552.  See Durbin v. Ross (1996), 276 Mont. 463,
472, 916 P.2d 758, 764.  Section 552 provides:

     (1) One who, in the course of his business, profession or employment, or
     in any other transaction in which he has a pecuniary interest, supplies false
     information for the guidance of others in their business transactions, is
     subject to liability for pecuniary loss caused to them by their justifiable
     reliance upon the information, if he fails to exercise reasonable care or
     competence in obtaining or communicating the information.

     In Kitchen Krafters v. Eastside Bank of Montana (1990), 242 Mont. 155, 789 P.2d
567 (overruled in part on other grounds by Busta v. Columbus Hosp. Corp. (1996), 276
Mont. 342, 370, 916 P.2d 122, 139), we set out the following elements of a claim for
negligent misrepresentation:

          a)   the defendant made a representation as to a past or existing

material fact;

      b)    the representation must have been untrue;

      c)    regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true;

      d)    the representation must have been made with the intent to induce the plaintiff to rely on it;

      e)    the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation;

      f)    the plaintiff, as a result of its reliance, must sustain damage.

Kitchen Krafters, 242 Mont. at 165, 789 P.2d at 573.

Although a negligent misrepresentation may give rise to actual or constructive fraud, where it is insufficient to do so, it may "nevertheless give rise to negligence liability under õ 27-1-701, MCA, through want of ordinary care of the defendant in managing his property or person." Bottrell v. American Bank (1989), 237 Mont. 1, 21, 773 P.2d 694, 706.

A threshold element in any claim for negligent misrepresentation is that the defendant make a representation as to a past or existing material fact upon which the claim is based. Kitchen Krafters, 242 Mont. at 165, 789 P.2d at 573.

The District Court granted First Bank's motion for summary judgment with respect to Mattingly's claim for negligent misrepresentation on two grounds. First, the court found that First Bank had not conducted a formal appraisal and had accordingly made no representation to Mattingly regarding the property's value. Second, the court found Mattingly could not have relied on any representations by First Bank before deciding to purchase the property. In so finding, the court noted that First Bank loaned money to Mattingly after he had already entered into a buy-sell agreement with Habets.

Following review of the record, this Court concludes the District Court erred in determining as a matter of law that the record contained no evidence of misleading statements made by First Bank to Mattingly and upon which he might have relied in purchasing the service station. When considering a motion for summary judgment, this Court must view the evidence in the light most favorable to the party opposing the motion. Bowen v. McDonald (1996), 276 Mont. 193, 199, 915 P.2d 201, 205. From this perspective, we conclude that a jury might well have viewed First Bank's conduct as a representation.

It was First Bank's practice to perform an appraisal prior to approving a loan on commercial real estate. Accordingly, prior to First Bank's approval of Mattingly's loan request, Dolan inspected the subject property. First Bank concedes that Dolan visited the

property and conducted an inspection "to obtain an impression regarding its value for the purpose of determining whether First Bank would be secure in its loan."  First Bank's loan committee subsequently approved Mattingly's loan request in the amount of $56,000.

Beyond these bare facts, however, the parties are in dispute.  The parties dispute the true nature, scope, and import of First Bank's evaluation of the property.  They additionally dispute whether First Bank's appraisal of the property and subsequent approval of Mattingly's loan request constituted a representation that the property had a value of at least $56,000.   Whether First Bank's appraisal of the property, along with its subsequent approval of Mattingly's loan request, constitutes a representation that the property had a value of at least $56,000 is a question of material fact.

Assuming First Bank's appraisal of the property constituted an affirmative representation to Mattingly regarding its value, the parties additionally dispute whether Mattingly in fact relied upon such a representation in purchasing the property.  The District Court found that even had First Bank misrepresented the property's value Mattingly could not have relied on that representation in purchasing the property. In so concluding, the court correctly noted it was only "after [Mattingly] had entered into the buy-sell agreement" that he contacted the Bank to secure financing. However, Mattingly expressly conditioned his commitment to purchase the property upon his ability to obtain that financing.  Finalization of the sale was, therefore, contingent upon First Bank's approval of his loan application and, arguably, its determination that the property was worth the amount of the loan.  Therefore, whether Mattingly relied on any representation by First Bank with respect to the property's value in finalizing the sale is an additional question of material fact.

Based on the foregoing, we hold the District Court erred in granting summary judgment with respect to Mattingly's claim for negligent misrepresentation. Specifically, we hold the court erred in finding no question of fact as to whether First Bank made an affirmative representation regarding the condition or value of the property upon which Mattingly might have relied.

                    ISSUE 2

With respect to Mattingly's claim for constructive fraud, did the District Court err in finding no special circumstances giving rise to a duty on the part of First Bank to disclose to Mattingly any information it may have had regarding the contamination?

In addition to claims for negligence and negligent misrepresentation, Mattingly alleged a claim of constructive fraud against First Bank. The presence of a legal duty is an essential element of a claim for constructive fraud. Section 28-2-406, MCA, defines constructive fraud as :

> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

Thus, in addressing First Bank's motion for summary judgment with respect to Mattingly's claim for constructive fraud, this Court must first determine whether the lower court erred in concluding First Bank owed no duty to Mattingly to disclose any information it may have had regarding the contamination.

Whether or not a legal duty exists is a question of law for the court's determination. Simmons v. Jenkins (1988), 230 Mont. 429, 435, 750 P.2d 1067, 1071. Although the legal duty which often exists in constructive fraud cases is a fiduciary one, this Court has previously held that Montana's constructive fraud statute "does not require that the plaintiff demonstrate a fiduciary relationship, [but] merely requires the establishment of a duty." McJunkin v. Kaufman & Broad Home Systems (1987), 229 Mont. 432, 439, 748 P.2d 910, 915. Under certain "special circumstances," neither a confidential nor a fiduciary relationship is necessary for a finding of constructive fraud. Drilcon, Inc. v. Roil Energy Corp. (1988), 230 Mont. 166, 172, 749 P.2d 1058, 1061.

This Court has held special circumstances may exist where one party has acted to mislead the other in some way. Specifically, this Court has determined that constructive fraud may be present "[w]here sellers [of real property], by words or conduct, create a false impression concerning serious impairment or other important matters and subsequently fail to disclose the relevant facts." McGregor v. Mommer (1986), 220 Mont. 98, 109, 714 P.2d 536, 543 (citing Moschelle v. Hulse (1980), 190 Mont. 532, 539, 622 P.2d 155, 159.) Further, in Drilcon, 230 Mont. at 172, 749 P.2d at 1061-62, we affirmed a jury instruction on the question of constructive fraud which provided that "[w]here a party, by his words or conduct creates a false impression concerning serious impairments or other important matters and subsequently fails to disclose relevant facts, constructive fraud may be found."

In McGregor, we identified special circumstances justifying submission of the question of constructive fraud to the jury where sellers of a gas station "made [misleading and] general statements about the profitability of the business." McGregor, 220 Mont. at 109, 714 P.2d at 543. Similarly, in Moschelle, we held special circumstances

supporting a claim for constructive fraud existed where sellers made misleading statements regarding the physical condition of the property and the income generated from the business.  Moschelle, 190 Mont. at 539-40, 622 P.2d at 159.  We recognized that "[w]ithholding relevant facts concerning purchased property can be a fraudulent act." Moschelle, 190 Mont. at 539, 622 P.2d at 159.

In McJunkin, buyers of a mobile home brought suit against the manufacturer and seller, asserting several claims, including one for constructive fraud.  McJunkin, 229 Mont. at 439, 748 P.2d at 914.  We "recognized that a sufficient duty can arise in [such] a commercial transaction," and concluded that "defendants had a duty to refrain from intentionally or negligently creating a false impression by words or conduct." McJunkin, 229 Mont. at 439-40, 748 P.2d at 915.

In the present case, the District Court found no special circumstances to support Mattingly's claim for constructive fraud, and no factual basis upon which to predicate the existence of a duty.  In concluding that First Bank had no duty to disclose any information it may have had regarding the contamination, the District Court found that

> [t]here is no evidence that the Bank made any misleading statements to Mattingly which he relied on in purchasing the station.  The Bank was not even a party to the transaction.  It did not advise Mattingly in any way regarding the purchase nor did it represent Habets.  Moreover, Mattingly had never previously dealt with the Bank.  It was only after he had entered into the buy-sell agreement that he contacted the Bank to secure financing.  Thus, the Bank did not have a special relationship with Mattingly nor did it owe him a fiduciary duty.

Review of the record indicates the District Court erred in granting First Bank's motion for summary judgment with respect to the question of constructive fraud. Specifically, we hold the lower court erred in finding that "[t]here is no evidence that the Bank made any misleading statements to Mattingly which he relied on in purchasing the station."

As discussed above, we concluded that whether First Bank made misleading statements to Mattingly with respect to the condition or value of the property is a question of fact precluding summary judgment.  We further concluded that, assuming the presence of such a misrepresentation, the question of whether Mattingly relied on that statement in purchasing the station is an additional question of fact.

A duty sufficient to support a claim for constructive fraud may arise in a commercial transaction.  McJunkin, 229 Mont. at 439-40, 748 P.2d at 915.   Whether First Bank, by its words or conduct, created a false impression concerning the contamination, and subsequently failed to disclose relevant facts, is a question of material fact.  Special circumstances giving rise to a duty on the part of First Bank may

exist
should a trier of fact find that First Bank misrepresented the value of the property in light
of the contamination, and that Mattingly relied upon this representation in purchasing the
property.

Furthermore, First Bank had peculiar knowledge of the environmental hazard. Mattingly contracted with First Bank to borrow money, unaware of the duties and financial obligations he was assuming by becoming an owner of environmentally damaged property.  A jury may well conclude that such facts would constitute special circumstances in this case.

Based on the foregoing, we conclude that the District Court erred in summarily finding no special circumstances giving rise to a duty on the part of First Bank to disclose
any information it may have had regarding the ground contamination to Mattingly. Accordingly, we hold the District Court erred in granting First Bank's motion for summary judgment on Mattingly's claim for constructive fraud.

ISSUE 3

With respect to Mattingly's claim for constructive fraud, did the District Court err
in  finding that First Bank gained no advantage by failing to disclose the presence of
contamination?

The District Court granted First Bank's motion for summary judgment on the issue of constructive fraud on the additional basis that First Bank gained no advantage over
Mattingly by failing to disclose the contamination.  Pursuant to õ 28-2-406, MCA, a necessary component of any claim for constructive fraud is that, in breaching a duty, one
party "gain an advantage" over the other.

Mattingly argues that First Bank was advantaged by its alleged decision to withhold
information regarding the contamination in a number of respects.  For instance, Mattingly
points out that First Bank held the note on Habets' underlying loan, and that, upon closing the sale with Mattingly, First Bank was able to pay the balance remaining on Habets' loan.  Thus, Mattingly argues, First Bank found in him a borrower who knew nothing of the contamination and who would accordingly be less likely to default on his
loan than would a borrower, such as Habets, who knew the property to be seriously defective.  Mattingly also argues that First Bank was advantaged by failing to disclose the
contamination because, had Mattingly learned of the contamination, he would not have purchased the property and First Bank would not have been able to collect interest income
on the loan.

The District Court found that, even assuming First Bank knew of the contamination, it gained no advantage by failing to disclose its presence.  Specifically,
the court held that "[i]f Mattingly had defaulted on the loan and the Bank foreclosed on
its mortgage, the Bank might very well have ended up with a piece of property with

little
value, or which perhaps even constituted a financial liability."

Notwithstanding this fact, this Court concludes that whether or not First Bank gained advantage over Mattingly by failing to disclose the contamination, as contemplated by the definition of constructive fraud, is a question of material fact for the trier of fact.

## ISSUE 4

Did the District Court err in granting First Bank's motion for summary judgment on Mattingly's claim for punitive damages?

By way of his second amended complaint, Mattingly asserted a claim for punitive damages against First Bank. Because the District Court ordered summary judgment in First Bank's favor on Mattingly's claims for constructive fraud and negligent misrepresentation, it also granted First Bank's motion for summary judgment on his claim for punitive damages.

Having reversed the District Court's order with respect to Mattingly's claims for constructive fraud and negligent misrepresentation, we similarly reverse its grant of summary judgment on Mattingly's claim for punitive damages.

Pursuant to õ 27-1-221(1), MCA, punitive damages are available where a defendant is found guilty of actual fraud or actual malice. Accordingly, for the issue of punitve damages to reach the jury, Mattingly must present evidence of actual fraud or malice.

## CONCLUSION

In conclusion, we hold that the District Court erred in granting First Bank's motion for summary judgment and in making findings as a matter of law when a jury may well have reached a different conclusion. Specifically, we hold the District Court erred in finding that First Bank made no representation to Mattingly upon which he might rely to his detriment. We also hold the District Court erred in finding no special circumstances giving rise to a duty on the part of First Bank to disclose any information it may have had regarding the contamination to Mattingly. Finally, we hold the court erred in finding that First Bank gained no advantage by failing to disclose the presence of contamination and erred in granting First Bank's motion for summary judgment on the issue of punitive damages.

On these bases, we reverse the order of the District Court granting First Bank's motion for summary judgment and remand the case for further proceedings consistent with this opinion.


/S/ JIM REGNIER


We Concur:

/S/   J. A.   TURNAGE
/S/   W. WILLIAM LEAPHART
/S/   WILLIAM E. HUNT, SR.
/S/   TERRY N. TRIEWEILER
/S/ DOUGLAS G. HARKIN,
     District Judge sitting for Justice James C. Nelson


Justice Karla M. Gray, concurring in part and dissenting in part.


     I concur in the Court's opinion on issue one and agree that Mattingly must be permitted to proceed with his negligent misrepresentation claim against First Bank. I respectfully dissent, however, from that opinion on issue two, whether he may proceed on his constructive fraud claim.  As a result, I also dissent from issues three and four, which need not be reached under a proper resolution of issue two.  I would conclude that, because no underlying duty has been established on which the constructive fraud claim can rest, the District Court did not err in granting First Bank's motion for summary judgment on that claim.

     As the Court points out, the existence of a legal duty is a question of law for the district court's determination.  Moreover, the statute at issue, õ 28-2-406(1), MCA, clearly requires a foundational duty in a constructive fraud claim, by defining constructive fraud as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice. . . ."  (Emphasis added.)  Simply and plainly, the statute requires an existing duty, the breach of which accomplishes an advantage to one by means of misleading another to the second person's prejudice.  In other words, the result and means of breaching the duty remain secondary to the existence of the duty.

     The Court's "special circumstances" analysis essentially voids the duty requirement of the statutory constructive fraud claim by substituting the result and means of breaching the duty for the necessity of an underlying duty which can be breached.  In other words, the Court determines that genuine issues of material fact exist in that First Bank may have gained an advantage over Mattingly by misleading him to his prejudice.  It is my view that, under a straightforward interpretation of the plain words of the statute, the questions of whether First Bank "gain[ed] an advantage . . . over [Mattingly] by misleading him to his prejudice" are factual questions relating to a "breach."  Because there can be no "breach" without an underlying duty, these matters arise only if, and when, the underlying duty required by the statute has been established as a matter of law.  The existence of that duty, as the Court agrees, is a question of law for the district court.

     "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not . . . to omit what has been inserted."  Section 1-2-101, MCA.  I submit that calling the breach-related elements of the statutory constructive fraud claim "special circumstances" effectuates a judicial repeal of the duty requirement enacted by the legislature.

     For the same reasons,  it is my view that Drilcon, Inc. was an erroneous interpretation of the plain meaning of õ 28-2-406(1), MCA.  I would overrule that case and hold, with regard to issue two in this case, that the District Court did not err in granting First Bank's motion for summary judgment on the basis that no duty existed on which to premise a statutory constructive fraud claim.

                         /S/   KARLA M. GRAY