No. 98-720

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 212

H-D IRRIGATING, INC., and

WILLIAM H. LANE, JR.,

Plaintiffs, Respondents, and

Cross-Appellants,

v.

KIMBLE PROPERTIES, INC., HOBBLE

DIAMOND CATTLE CO., and LLOYD L.

KIMBLE,

Defendants and Appellants.

APPEAL FROM: District Court of the Sixth Judicial District,

In and for the County of Sweet Grass,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Susan G. Ridgeway, Datsopoulos, MacDonald & Lind, P.C.,

Missoula, Montana

For Respondents:

James L. Jones, Dorsey & Whitney, Billings, Montana

Submitted on Briefs: March 2, 2000

Decided: August 10, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiffs, H-D Irrigating, Inc. and William H. Lane, Jr., (Buyers), filed this action in the District Court for the Sixth Judicial District in Sweet Grass County to recover damages from the Defendants, Kimble Properties, Inc., Hobble Diamond Cattle Co., and Lloyd L. Kimble (Sellers), for misrepresentation and breach of a duty to disclose. The Defendants filed a counterclaim to recover payments due from the Plaintiffs for the property purchased. Following a nonjury trial, the District Court found the Defendants were liable for constructive fraud and that the Plaintiffs were liable for payment pursuant to the promissory note. The Defendants appeal and the Plaintiffs cross-appeal. We affirm in part and reverse in part the judgment of the District Court and remand to the District Court for further proceedings.

¶2 The following issues are presented on appeal:

¶3 1. Did Kimble Properties, Inc. waive its right to appeal when it accepted partial payment that H-D Irrigating, Inc. had deposited with the clerk of district court?

¶4 2. Did the District Court have jurisdiction to decide the issue of constructive fraud?

¶5 3. Did the District Court err when it concluded that the Sellers committed constructive fraud?

¶6 4. Are the District Court's findings of fact clearly erroneous?

¶7 5. Did the District Court abuse it discretion when it assessed damages against Hobble Diamond Cattle Co. and Lloyd Kimble?

¶8 6. Did the District Court abuse its discretion when it calculated damages?

¶9 7. Did the District Court abuse its discretion when it held neither party was the prevailing party and did not award attorney fees?

## FACTUAL BACKGROUND

¶10 On February 13, 1991, William H. Lane, Jr. agreed with Hobble Diamond Cattle Co. and Kimble Properties, Inc. to purchase land from Hobble Diamond Cattle Co. for $1,650,000 and irrigation equipment from Kimble Properties, Inc. for $350,000. Lloyd L. Kimble was the president of both companies.

¶11 Subsequently, on April 1, 1991, Lane assigned his rights and his duties regarding the irrigation equipment to H-D Irrigating, Inc. Lane was the president of H-D Irrigating, Inc. On May 24, 1991, in accordance with the purchase agreement, H-D Irrigating, Inc. paid Kimble Properties, Inc. $150,000 and executed a promissory note in the amount of $200,000. The note bore interest at a rate of 8 percent per year and provided:

> On June 15, 1992, Maker shall pay all accrued and unpaid interest then outstanding. On June 15, 1993, the outstanding principal balance of this Note and all accrued and unpaid interest shall be due and payable in full.

The note further provided:

> If any payment due under this Note is not paid in full within fifteen days of the time specified therefor, the unpaid principal balance of this Note and all accrued and unpaid interest shall be immediately due and payable without notice and shall thereafter bear interest at the rate of 11% per annum.

¶12 On June 16, 1992, the Buyers filed a complaint, in which, among other claims, they alleged misrepresentation and breach of a duty to disclose. The Buyers alleged that Lloyd Kimble falsely represented that the irrigation equipment was in working order; that all pivots could be operated at the same time; that the irrigation system provided sufficient water for the acreage; and that he knew of no irrigation system deficiencies. On the same

day the Buyers filed their complaint, they also filed a motion to deposit their first promissory note payment with the clerk of court pursuant to Rule 67, M.R.Civ.P. On June 18, 1992, the District Court granted the Buyers' motion and the Buyers deposited $16,000 with the clerk of court.

¶13 On March 1, 1995, a nonjury trial commenced. Denzel Schmidt, who was a ranch foreman for Lloyd Kimble from 1983 to 1991, testified:

Q. Would you just tell the Court what was done to convert the old river channel to make a full circle out of pivot 3?

A. We leveled off the high spots and filled in the low spots and just leveled it.

Q. Were there willows and brush growing in the old channel?

A. Yes.

Q. And what did you do with that?

A. Pushed it into the channel and buried it.

Q. Pushed in the dirt over the top of it?

A. Yes.

Q. Was there any compacting done when the field was leveled?

A. No.

Q. Was there any riprap placed along the river side of the field where the old river channel had-where the river would come in from that direction?

A. No.

Q. Now, when you were present there after 1983, from 1983 through 1990, did you observe any erosion by the river into field 3?

A. Yes.

. . . .

Q. Did you talk to Mr. Kimble about the river eroding into the-where the old river had been?

A. Yes.

. . . .

Q. Did you recommend to him that you riprap it?

A. Yes, a conversation with either Blain Lininger or Doug Mullaney-I don't rember which one it was. But I remember the conversation that they suggested that we would riprap it.

Q. And you talked to Mr. Kimble about that?

A. Yes.

Q. Did Mr. Kimble-what was his response to the recommendation of the three of you that you riprap that field to protect it from erosion?

A. He said that the riprap would cost more than what the land was worth and he'd just let the river take it back.

Schmidt remained the ranch foreman after Lane purchased the ranch.

¶14 Following the trial, the District Court entered findings of fact and conclusions of law. The District Court found:

12. *Mr. Kimble did exaggerate the size and efficiency of the irrigation system* as well as the production of hay from the ground beneath it. For a variety of reasons, including sizes of pumps, pump wear and basic system design, in 1990 and 1991 the irrigation system was incapable of running all six pivots . . . .

. . . .

16. Although Mr. Lane had notice of erosion problems via the exception to coverage under the title insurance policy, he did not have notice of the extent of such problems as might be expected on pivot three. There is no evidence Mr. Lane knew, or had an effective means of knowing, that the original half-circle of pivot three had ben expanded to a full circle by extending the pivot into an old river channel. As noted in paragraph 12 above, Mr. Lane could have known of the extent of erosion which had taken place in the years since Pivot three was extended to a full-circle. However, this, as well as the title insurance policy exception, would only have put him on notice of the inherent vagaries of the Yellowstone River. *It did not necessarily put him on notice of the risk of greatly increased erosion when a field is planted in an old river channel which has not been reinforced with rip-rap to prevent the river from reclaiming its old channel.* Mr. Kimble did not disclose this.

(Emphasis added.) Based on these factual findings the District Court concluded that:

21. Mr. Kimble's failure to disclose the extent and cause of the erosion on pivot three could not be reasonably discovered by Mr. Lane prior to closing and constitutes a material misrepresentation upon which Mr. Lane reasonably relied to his detriment.

¶15 With respect to H-D Irrigating, Inc.'s obligation on the note, the District Court also concluded that:

24. Defendant, Monte Kimble is entitled to a net payment on the promissory note in the amount of $123,940.96, calculated as follows:

Sales Price of Irrigation System $350,000.00

Less initial payment ($150,000.00)

Amount due on Promissory note $200,000.00

Less damages for misrepresentations ($ 99,575.00)

Balance due to Kimble Properties $100,425.00

Plus interest at 11% from 5/24/96

to 7/10/98 $ 23,515.96

Total as of 7/10/98 $123,940.96

More facts will be discussed as they are relevant to the issues presented.

## STANDARD OF REVIEW

¶16 We review a district court's conclusions of law to determine if they are correct. *McCormick v. Brevig*, 1999 MT 86, ¶ 73, 294 Mont. 144, ¶ 73, 980 P.2d 603, ¶ 73. We review a district court's findings of fact to determine whether they are clearly erroneous. *In re the Estate of Bolinger*, 1998 MT 303, ¶ 29, 292 Mont. 97, ¶ 29, 971 P.2d 767, ¶ 29. We review a district court's award of damages to determine whether the district court abused its discretion. *Martinell v. Montana Power Co.* (1994), 268 Mont. 292, 320, 886 P.2d 421, 438. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *See C. Haydon Ltd. v. Montana Mining Properties, Inc.* (1997), 286 Mont. 138, 146, 951 P.2d 46, 51.

## ISSUE 1

¶17 Did Kimble Properties, Inc. waive its right to appeal when it accepted partial payment that H-D Irrigating, Inc. had deposited with the clerk of district court?

¶18 The Buyers contend that Kimble Properties, Inc. waived its right to appeal when it accepted $21,928.87 that had been deposited with the clerk of court, following the District Court's order to release the funds. The Buyers argue that Kimble Properties, Inc. accepted the benefits of the District Court's judgment and therefore is prohibited from prosecuting an appeal to reverse that judgment. The Sellers respond that since reversing the judgment cannot possibly affect the benefit Kimble Properties, Inc. has accepted, Kimble Properties, Inc. has not waived its right to appeal.

¶19 The general rule is that a litigant who voluntarily and with knowledge of all the material facts accepts the benefits of an order, decree, or judgment of court, cannot afterward take or prosecute an appeal to reverse it. 5 Am. Jur. 2d *Appellant Review* § 628 (1995); *Maloney v. Heer* (1993), 257 Mont. 500, 505, 850 P.2d 957, 960. In *Peck v.*

*Bersanti* (1935), 101 Mont. 6, 8, 52 P.2d 168, 169, we held:

> The rule is generally recognized that the right to accept the fruits of a judgment and at the same time to prosecute an appeal from it are not concurrent; on the contrary, they are wholly inconsistent rights. The election of one necessarily excludes the enjoyment of the other. *In re Black's Estate*, 32 Mont. 51, 79 P. 554; 2 R.C.L. 61; 3 C.J. 679. Like most general rules, however, this one is subject to certain exceptions and qualifications. The exception to this rule, which is everywhere recognized, is that where the reversal of a judgment cannot possibly affect an appellant's right to the benefit accepted under a judgment, then appeal may be taken and will be sustained despite the fact that the appellant has sought and secured such benefit.

(Followed in *Niles v. Carbon County* (1977), 174 Mont. 20, 23, 568 P.2d 524, 526-27.)

Acceptance of payments that were not contested or which were irrevocably conceded as due by the opposing party, does not preclude appeal. 5 Am. Jur. 2d, *Appellant Review* § 632 (1995).

¶20 In this case, H-D Irrigating, Inc. has not contested its obligation pursuant to the promissory note, nor does it dispute that it owes at least the amount that Kimble collected regardless of the outcome of the appeal and cross-appeal. H-D Irrigating, Inc. conceded its obligation to Kimble Properties, Inc. on June 15, 1992, when it moved the District Court to allow it to deposit the first payment due on the note with the clerk of district court. The Buyers' motion stated:

> In this litigation plaintiffs seek to recover damages they have incurred by virtue of the defects and deficiencies in irrigation equipment sold to them by defendants. Plaintiff H-D Irrigating Co, Inc. is the maker of a promissory note, dated May 24, 1991, payable to defendant Kimble Properties, Inc. in the amount of $200,000.00. . . . Under the terms of the Promissory Note H-D Irrigating is to make an interest payment on June 15, 1992. The amount of interest is $16,000.00. Plaintiff now requests leave of Court pursuant to Mont. R. Civ. P. 67 to deposit the June 15, 1992 interest payment with the Clerk of Court for placement in an interest-bearing account pending the outcome of this litigation.

When Kimble Properties, Inc. accepted the funds released by the District Court, it did not waive its right to appeal. It simply accepted that which H-D Irrigating, Inc. had already

conceded was due, and no more than it concedes will be due in the event the Buyers' cross-appeal is successful. Accordingly, we conclude that Kimble Properties, Inc. did not waive its right to appeal when it accepted funds that H-D Irrigating, Inc. had deposited with the clerk of court.

## ISSUE 2

¶21 Did the District Court have jurisdiction to decide the issue of constructive fraud?

¶22 The Sellers contend that the Buyers did not notify them in their pleadings or by evidence submitted at trial that they were claiming Lloyd Kimble created a false impression regarding the condition of the field at pivot three. The Sellers argue that the Buyers' complaint concerned defects and misrepresentations relating to the irrigation system, not the land. Therefore, the Sellers argue, the District Court did not have jurisdiction to enter judgment allowing the Buyers to recover the cost of riprap, which concerned the land, not the irrigation equipment. The Buyers respond that the District Court's award of damages for the cost of riprap ($92,000) and the cost to modify pivot three to account for erosion ($7575) resulted from the Sellers' misrepresentations concerning the irrigation system. The Buyers contend, therefore, that the relief the District Court awarded was based on the pleadings and the pretrial order and the District Court had issue jurisdiction.

"A district court does not have jurisdiction to grant relief outside of the issues presented by the pleadings unless the parties stipulate that other questions be considered or the pleadings are amended to conform to the proof." *Ryan v. City of Bozeman* (1996), 279 Mont. 507, 511, 928 P.2d 228, 230 (citing *Old Fashion Baptist Church v. Montana Dep't of Revenue* (1983), 206 Mont. 451, 457, 671 P.2d 625, 628).

¶23 In this case, we conclude that the pleadings and the final pretrial order gave the Sellers sufficient notice of the disputed issues to vest the District Court with issue jurisdiction. Count II of the Buyers' complaint alleged:

> Defendants made material representations regarding the irrigation equipment upon which the Plaintiffs reasonably and justifiable relied. . . . Defendants' material misrepresentations and concealment of material facts was a direct and proximate cause of damage and injury to Plaintiffs, including but not limited to the expenses incurred and to be incurred by Plaintiffs in repairing and replacing the irrigation

equipment in order to bring it to the level of performance represented.

Among the Buyers' contentions listed in the final pretrial order of February 24, 1995, was the following:

> Following its purchase of the irrigation system, H-D Irrigating learned that, contrary to Kimble's representations and inducements, the irrigation equipment was deficient and defective in several material respects. The following defects, among others, were identified:
>
> . . . .
>
> (6) A substantial volume of river bank in the areas of pivot number three was lost due to erosion. The erosion could have been prevented through the use of rip rap and other protective material. Because 105 feet of river bank was lost it will be necessary for H-D Irrigating to install a new booster pump.

We conclude that the District Court based its judgment on the issues presented. Accordingly, we hold that the District Court had jurisdiction to decide the issue of constructive fraud.

## ISSUE 3

¶24 Did the District Court err when it concluded that the Sellers committed constructive fraud?

¶25 Section 28-2-406, MCA provides:

> Constructive fraud consists in:
>
> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or
>
> (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

The presence of a legal duty is an essential element of a claim for constructive fraud.

*Mattingly v. First Bank of Lincoln* (1997), 285 Mont. 209, 218, 947 P.2d 66, 71; *Houdashelt v. Lutes* (1997), 282 Mont. 435, 447, 938 P.2d 665, 672. In *Mattingly*, we stated:

> Whether or not a legal duty exists is a question of law for the court's determination. Although the legal duty which often exists in constructive fraud cases is a fiduciary one, this Court has previously held that Montana's constructive fraud statute "does not require that the plaintiff demonstrate a fiduciary relationship, [but] merely requires the establishment of a duty." Under certain "special circumstances," neither a confidential nor a fiduciary relationship is necessary for a finding of constructive fraud.
>
> This Court has held special circumstances may exist where one party has acted to mislead the other in some way. Specifically, this Court has determined that constructive fraud may be present "[w]here sellers [of real property], by words or conduct, create a false impression concerning serious impairment or other important matters and subsequently fail to disclose the relevant facts." Further, in *Drilcon, [Inc. v. Roil Energy Corp.* (1988), 230 Mont. 166, 172, 749 P.2d 1058, 1061-62]*,we affirmed a jury instruction on the question of constructive fraud which provided that "[w]here a party, by his words or conduct creates a false impression concerning serious impairments or other important matters and subsequently fails to disclose relevant facts, constructive fraud may be found."

285 Mont. at 218-19, 947 P.2d at 72 (citations partially omitted). In *Moschelle v. Hulse* (1980), 190 Mont. 532, 539, 622 P.2d 155, 159, where a seller made statements regarding the physical condition of a building and the profitability of a business, we held:

> Under the facts here, the defendants were under a duty to make such disclosures as would erase the false impressions created in the minds of the plaintiffs that repairs to the premises were not needed and that winter earnings were sufficient for the plaintiffs' needs.

¶26 The Sellers contend the District Court applied the wrong legal standard. They argue, in reliance on *State ex rel. State Fund v. Berg* (1996), 279 Mont. 161, 175-76, 927 P.2d 975, 983, that constructive fraud requires proof similar to that required for actual fraud. The Sellers, however, have misconstrued our holding in *Berg*. In *Berg*, after reciting the nine elements of actual fraud, the opinion states:

A claim of misrepresentation or constructive fraud requires similar proof, except that the plaintiff need not prove the fifth element relating to intent to deceive or dishonesty of purpose. *Davis*, 852 P.2d at 644 (*citing Lee*, 798 P.2d at 88).

279 Mont. at 175-76, 927 P.2d at 983. The legal question presented in *Berg* was whether the plaintiff pled constructive fraud with sufficient particularity. The quoted language misstated the elements of constructive fraud, but was of no significance to the opinion because it was unnecessary to the issue decided. The language relied on was merely dicta. The legal standard for constructive fraud is set forth in § 28-2-406, MCA. We conclude that the District Court applied the correct legal standard for constructive fraud.

¶27 The Sellers next contend that the District Court did not make a sufficient factual finding to support its legal conclusion that Lloyd Kimble committed constructive fraud. The Sellers argue that they had no duty to disclose the risk of erosion at pivot three because there was no evidence that Lloyd Kimble created a false impression regarding the risk of erosion at pivot three, and further that the District Court made no such finding. The Buyers respond that the District Court's conclusion that Lloyd Kimble failed to disclose the extent and cause of the erosion on pivot three was based on the factual predicate that the Sellers had knowledge of the risk of erosion.

¶28 We follow the doctrine of implied findings. *Poulsen v. Treasure State Indus., Inc.* (1981), 192 Mont. 69, 77, 626 P.2d 822, 827. In *Poulsen* we said:

> The Supreme Court adheres to the doctrine of implied findings which states that where a court's findings are general in terms, any findings not specifically made, but necessary to the judgment, are deemed to have been implied, if supported by the evidence.

192 Mont. at 77, 626 P.2d at 827.

¶29 In this case, the evidence supports the District Court's findings. Although no fiduciary relationship existed between the parties, like the sellers in *Moschelle*, Lloyd Kimble created a false impression which established a duty to disclose. After Lloyd Kimble created a false impression by exaggerating the efficiency of the irrigation system, the Sellers assumed a duty to disclose the fact that they had filled the old river channel thereby creating an increased risk of serious impairment to pivot number three. *See Mattingly*, 285

Mont. at 218, 947 P.2d at 72. The testimony of Lloyd Kimble's employee refutes the Sellers' argument that Lloyd Kimble had no knowledge which would give rise to a duty. Denzel Schmidt testified that pivot three was made into a full circle by filling an old river channel; that he observed erosion at pivot three from 1983 through 1990; and that he suggested riprap to protect pivot three. During the trial Schmidt testified:

> Q. And you talked to Mr. Kimble about [the riprap].
>
> A. Yes.
>
> Q. Did Mr. Kimble-what was his response to the recommendation of the three of you that you riprap that field to protect it from erosion?
>
> A. He said that the riprap would cost more than what the land was worth and he'd just let the river take it back.

The evidence supports the implied finding that Lloyd Kimble had knowledge of the increased risk.

¶30 The District Court also found that the Sellers breached their duty by failing to disclose the risk of increased erosion resulting from planting a field in an old river channel with no riprap to prevent the river from reclaiming its old channel. The District Court found that the Buyers had no notice of this risk. The District Court concluded that:

> Mr. Kimble's failure to disclose the extent and cause of the erosion on pivot three could not be reasonably discovered by Mr. Lane prior to closing and constitutes a material misrepresentation upon which Mr. Lane reasonably relied to his detriment.

The District Court's factual findings are sufficient to support its legal conclusion that the Sellers were liable for constructive fraud. Accordingly, we conclude the District Court did not err when it concluded that the Sellers were liable for constructive fraud.

## ISSUE 4

¶31 Are the District Court's findings of fact clearly erroneous?

¶32 The Sellers contend that many of the District Court's findings of fact are clearly

erroneous.

¶33 First, the Sellers argue that there was no evidence to support the District Court's finding that a risk of greatly increased erosion exists when a field is planted in an old river channel which has not been reinforced with riprap. The Sellers assert that expert testimony was required before the District Court could make such a finding, and that the District Court simply speculated. The Buyers respond that the Sellers' employees testified that the field at pivot three was constructed with fill; that it was subject to erosion; and that riprap would be necessary to prevent the erosion. The Buyers further contend that the District Court's finding did not require expert testimony.

34 ¶A case that does not require specialized knowledge, does not require expert testimony. *Wagner v. Cutler* (1988), 232 Mont. 332, 339, 757 P.2d 779, 783. In *Wagner*, the purchaser of residential real estate brought suit against the vendor for defects in the home. The plaintiff contacted a real estate agent in Bozeman who showed plaintiff the house and who represented that the house was well built and according to code. The plaintiff moved in and subsequently discovered defects in the house such as a hazardous chimney, poor ceiling insulation, a broken sewage pump, and a faulty lawn sprinkler. The plaintiff sued to recover damages for misrepresentation and violation of the duty to inspect and disclose defects. We held:

> The test for the admissibility of expert testimony is whether the matter is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact. The instant case presented no concept or requirement of specialized knowledge beyond the cognizance of the judge.

*Wagner, 232 Mont. at 339, 757 P.2d at 783 (citation omitted).*

¶35 In this case, Schmidt testified that to make pivot number three into a full circle, the old river channel was filled, no compaction was done, and no riprap was installed, in spite of the fact that Schmidt suggested it. Schmidt further testified that he frequently observed erosion at pivot number three. Based on these facts, the District Court was capable of finding "a risk of greatly increased erosion exists when a field is planted in an old river channel which has not been reinforced with rip-rap," without the benefit of expert opinion evidence.

¶36 Second, the Sellers contend that there was no evidence that the condition of a portion

of field three was material to the purchase agreement. The Sellers argue that "only 22 acres or approximately 2.5% of the total acreage" was lost to erosion, which is not material. The Buyers respond that not only are 22 acres of irrigated land material, but that erosion of those 22 acres materially affected the irrigation system.

¶37 The standard for constructive fraud is not materiality. In *Mattingly*, we said:

> [C]onstructive fraud may be present "[w]here sellers [of real property], by words or conduct, create a false impression concerning *serious impairment* or *other important matters* and subsequently fail to disclose the relevant facts."

285 Mont. at 219, 947 P.2d at 72 (emphasis added). "Serious impairment" or "other important matters" is required for proof of constructive fraud.

¶38 In this case, the District Court found that it cost "$92,000 for riprap to prevent further erosion and $7,575 to modify pivot 3 to account for such erosion, for a total of $99,575." Filling the old river bed and thereby creating a greatly increased risk of erosion was a serious impairment that cost the Buyers $99,575 to fix. We conclude that the District Court's finding was not clearly erroneous.

¶39 Third, the Sellers contend that there was no evidence to support the District Court's finding that the Buyers had no means of knowing the increased risk associated with filling the old river bed at pivot 3. The Sellers argue that if Lane had spoken with Schmidt, he would have discovered how pivot threewas expanded.

¶40 Lloyd Kimble testified that after the old river channel was filled at pivot 3, it looked like any other field. He said:

> Q. In fact, you did a good enough job of leveling it off that, when it was done, you couldn't really tell that it was an old river channel there could you?
>
> A. Not when it was in alfalfa. We cleared the land and leveled it off. It looks like any other field would.

This testimony provides a sufficient basis for the District Court's finding that "there is no evidence Mr. Lane knew, or had an effective means of knowing, that the original half-circle of pivot three had been expanded to a full circle by extending the pivot into an old river channel." The Buyers were not required to speak with the Sellers' employees before

purchasing the irrigation equipment.

¶41 Finally, the Sellers contend the Buyers cannot recover for constructive fraud based on the Sellers' failure to disclose facts that the Buyers knew to exist. The Sellers argue that since the Buyers' consultant, Windsor Wilson, noticed that the field was planted in a river channel and that the absence of riprapping was obvious, the Sellers had no duty to disclose the risk of increased erosion. The Sellers contend that to discover the increased risk of erosion all the Buyers had to do was consult with Wilson.

¶42 Wilson was a ranch consultant hired to assist William Lane in developing the ranch. He testified that he inspected field number three on the last three or four days in May 1991. The sale closed on May 24, 1991. Therefore, his observation of the filled area occurred after the closing and could have provided the Buyers with no knowledge.

¶43 Based on the foregoing we conclude that the District Court's findings of fact were not clearly erroneous.

## ISSUE 5

¶44 Did the District Court abuse it discretion when it assessed damages against Hobble Diamond Cattle Co. and Lloyd Kimble?

¶45 The Sellers contend that if anyone, "the entity responsible for constructive fraud relating to the condition of the field at Pivot #3 was Hobble Diamond Cattle Co., not Kimble Properties or Lloyd 'Monty' Kimble." The Sellers argue "Hobble Diamond Cattle Co. owned and sold the real property to Lane, and Kimble Properties owned and sold only the irrigation equipment." The Buyers respond that Kimble is individually liable for his own conduct regardless of who his principal was at the time. The Buyers argue that a principal and its agent are jointly and severally liable for the agent's wrongful acts.

¶46 A principal is liable for wrongs committed by an agent while the agent acts within the scope of his employment. *Keller v. Safeway Stores, Inc.* (1940), 111 Mont. 28, 35, 108 P.2d 605, 610; *McCarty v. Lincoln Green, Inc.* (1980), 190 Mont. 306, 311, 620 P.2d 1221, 1224. Further, a director or officer is individually liable for his false representations. *Poulsen v. Treasure State Indus., Inc.* (1981), 192 Mont. 69, 82, 626 P.2d 822, 829. In *Poulsen*, we said:

It is clearly established that a director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates even though his action in such respect may be in furtherance of the corporation's business. This personal liability attaches regardless of whether liability also attaches to the corporation.

192 Mont. at 82, 626 P.2d at 829 (citations omitted).

¶47 In this case, Lloyd Kimble was the president of Hobble Diamond Cattle Co. and Kimble Properties, Inc, which made him an agent of both companies. Hobble Diamond Cattle Co. sold land to the Buyers and Kimble Properties, Inc. sold irrigation equipment to the Buyers. In assessing liability, neither the District Court's findings of fact and conclusions of law, nor its judgment, make a distinction between Hobble Diamond Cattle Co. and Kimble Properties, Inc.; rather, both documents simply refer to the "Defendants." However, when Lloyd Kimble represented to the Buyers that the irrigation equipment was in working order; that all pivots could be operated at the same time; that the irrigation system provided sufficient water for the acreage; and that he knew of no problems or deficiencies with the irrigation equipment or the irrigation system, he was acting within the scope of his employment as the president of Kimble Properties, Inc., which owned the irrigation equipment. Lloyd Kimble's representations concerned the irrigation equipment, not the land. The subsequent damage to the irrigation system was caused by the erosion of land, but at the time of the representation Lloyd Kimble was referring to the irrigation equipment and acting as an agent of its owner Kimble Properties, Inc. Hobble Diamond Cattle Co., however, is not liable for Lloyd Kimble's misrepresentations because he was not acting on its behalf when he made representations regarding the irrigation system. Kimble Properties, Inc. and Lloyd Kimble are jointly and severally liable for the Buyers' damages resulting from Lloyd Kimble's constructive fraud, but Hobble Diamond Cattle Co. has no liability. Accordingly we hold the District Court did not err when it assessed damages against Kimble Properties, Inc. and Lloyd Kimble, but the District Court did err when it assessed damages against Hobble Diamond Cattle Co.

## ISSUE 6

¶48 Did the District Court abuse its discretion when it calculated damages?

¶49 Every person who suffers detriment from the unlawful act of another may recover damages. Section 27-1-202, MCA. The detriment suffered must result from the unlawful

act. *See Lima School Dist. No. 12 and Elementary School Dist. of Beaverhead County v. Simonsen* (1984), 210 Mont. 100, 112, 683 P.2d 471, 477. "Detriment is a loss or harm suffered in person or property." Section 27-1-201, MCA.

¶50 The District Court concluded that Lloyd Kimble was entitled to "a net payment on the promissory note in the amount of $123,940.96," calculated as follows:

Sales Price of Irrigation System $350,000.00

Less initial payment ($150,000.00)

Amount due on Promissory note $200,000.00

Less damages for misrepresentations ($ 99,575.00)

Balance due to Kimble Properties $100,425.00

Plus interest at 11% from 5/24/96

to 7/10/98 $ 23,515.96

Total as of 7/10/98 $123,940.96

¶51 Both parties contend that the District Court abused its discretion. The Sellers contend that the District Court subtracted an offset before calculating interest, calculated interest from May 24, 1996, rather than from May 24, 1991, and failed to award interest at the rate of 11 percent per annum on the obligation that had accrued from June 15, 1992. On cross-appeal the Buyers contend that Lloyd Kimble's failure to disclose information material to the agreement was a breach that suspended H-D Irrigating, Inc.'s obligation to pay on the note until the District Court resolved the parties' rights and obligations. Relying on *Sjoberg v. Kravik* (1988), 233 Mont. 33, 759 P.2d 966, the Buyers argue that the accrual of all interest due under the note should have been suspended pending the District Court's resolution of the dispute. The Buyers also argue that they should receive prejudgment interest for their damages.

¶52 This case is distinguishable from *Sjoberg*, which involved a vendor who breached a land contract by failing to provide the purchaser with a mortgage release. In *Sjoberg*, we affirmed the district court's analysis:

[T]he District Court found that the provision in the contracts requiring the John Hancock Mutual Life Insurance Company releases was material to the contracts, and that the Kraviks' failure to produce such releases constituted a material breach of the contracts. It concluded therefore that Sjoberg's obligation to make payments ceased on the failure of the Kraviks to obtain the mortgage releases. The court however further found that Sjoberg was obligated to pay under the contracts commencing with the payments due in May of 1988, but that no interest should accrue on the contracts between the date of the last payment in 1982 and May 1988 because of the Kraviks' material breach.

233 Mont. at 39, 759 P.2d at 969. Unlike *Sjoberg*, the District Court here concluded that the Sellers were liable for constructive fraud, which gave rise to money damages, and did not serve as a basis to excuse H-D Irrigating, Inc.'s performance on the note. *See* Dan B. Dobbs, Dobbs Law of Remedies § 9.1 at 547 (2d ed. 1993). H-D Irrigating, Inc. was obligated to make timely payments on the promissory note. Further, H-D Irrigating, Inc. was not entitled to damages until the District Court adjudicated the constructive fraud issue, which occurred on July 10, 1998. Constructive fraud involves the breach of a duty, not a material breach of a contract. Accordingly, H-D Irrigating, Inc. was not entitled to offset its obligation pursuant to the promissory note until the time of judgment, July 10, 1998.

¶53 The Buyers argue that the District Court abused its discretion when it failed to award H-D Irrigating, Inc. prejudgment interest. The Buyers contend that damages in the amount of $92,000 for the riprap installation were incurred on April 26, 1993. According to the Buyers, interest began to accrue on that date.

¶54 Section 27-1-211, MCA, provides:

> Every person who is entitled to recover damages certain or capable of being made certain by calculation and the right to recover which is vested in him upon a particular day is entitled also to recover interest thereon from that day except during such time as the debtor is prevented by law or by the act of the creditor from paying the debt.

The district court may award prejudgment interest pursuant to § 27-1-211, MCA, when the following criteria are met:

1) there is an underlying monetary obligation; 2) the amount of recovery is certain or capable of being made certain by calculation; and 3) the right to recovery vests on a particular day. *R.H. Grover, Inc. v. Flynn Ins. Co.* (1989), 238 Mont. 278, 777 P.2d 338.

*DeTienne Associates Ltd. Partnership v. Farmers Union Mut. Ins. Co. (1994), 266 Mont. 184, 193, 879 P.2d 704, 710. Section 27-1-212, MCA, provides in part:*

> In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury.

¶55 In this case, the judge was the fact finder, not the jury; therefore, it was within the judge's discretion to determine whether interest was appropriate. Kimble Properties, Inc. and Lloyd Kimble did not have an underlying monetary obligation to H-D Irrigating, Inc. until held liable for constructive fraud on July 10, 1998. Therefore, we conclude the District Court did not abuse its discretion when it refused to award prejudgment interest to H-D Irrigating, Inc.

¶56 The parties, in this case, executed the promissory note on May 24, 1991, for $200,000 with interest of 8 percent per year. The note provided in part:

> On June 15, 1992, Maker shall pay all accrued and unpaid interest then outstanding. On June 15, 1993, the outstanding principal balance of this Note and all accrued and unpaid interest shall be due and payable in full.
>
> . . . .
>
> If any payment due under this Note is not paid in full within fifteen days of the time specified therefor, the unpaid principal balance of this Note and all accrued and unpaid interest shall be immediately due and payable without notice and shall thereafter bear interest at the rate of 11 percent per annum.

Pursuant to the note, the first payment of $16,966.03 was due on June 15, 1992. On June 16, 1992, the Buyers moved the District Court pursuant to Rule 67, M.R.Civ.P. to allow

the deposit of the first payment with the clerk of court. The District Court granted the Buyers' motion, and H-D Irrigating, Inc. deposited $16,000 with the clerk of district court pending further court order. Although H-D Irrigating, Inc.'s payment was $966.03 less than the amount due, we conclude that H-D Irrigating, Inc. substantially performed its obligation for the first payment. The second and final payment due on June 15, 1993, included the principal of $200,000, the unpaid balance of $966.03, and accrued interest on both, in the amount of $16,077.28, for a total of $217,043.31. H-D Irrigating, Inc. failed to make this payment by June 30, 1993, as required by the terms of the note, which implicated the 11 percent default provision of the note. The unpaid balance of $217,043.31, accrued interest from June 30, 1993, until the District Court entered judgment on July 10, 1998, in the amount of $120,027.35. Therefore, at the time of judgment, H-D Irrigating, Inc. owed a total of $337,070.66.

¶57 The District Court should have offset H-D Irrigating, Inc.'s obligation by the damages resulting from Lloyd Kimble's constructive fraud in the amount of $99,575 at the time of judgment. Therefore, when the District Court entered its judgment on July 10, 1998, H-D Irrigating, Inc. owed $237,495.66. Damages should have been calculated as follows:

Amount due on promissory note: $200,000.00

Accrued interest from May 24, 1991

to June 15, 1992 (387 days x $43.84 per day): $ 16,966.08

Less: Amount paid to Clerk of Court ($ 16,000.00)

Total unpaid interest and principle

owed after June 15, 1992: $200,966.08

Accrued interest from June 15, 1992

to June 15, 1993 ($200,966.03 x 8%): $ 16,077.28

Total owed as of June 15, 1992: $217,043.36

Accrued interest from June 30, 1993

to July 10, 1998 (1835 days x $65.41 per day): $120,027.35

Total owed as of July 10, 1998: $337,070.71

Less: Amount of judgment: ($ 99,575.00)

Total $237,495.71

Accordingly, we conclude that the District Court erred when it calculated damages.

## ISSUE 7

¶58 Did the District Court abuse its discretion when it held neither party was the prevailing party and did not award attorney fees?

¶59 The Sellers contend that the District Court erred when it determined that neither party was the prevailing party for purposes of awarding attorney fees. The Sellers contend that since the promissory note included a provision allowing collection of attorney fees and the District Court held that H-D Irrigating, Inc. was obligated to pay on the note, they were the prevailing party. The Buyers respond that since the District Court found the Sellers were liable for constructive fraud there is no prevailing party.

¶60 The general rule in Montana is that absent a statutory or contractual provision, attorney fees are not recoverable. *Kennedy v. Dawson*, 1999 MT 265, ¶ 52, 989 P.2d 390, ¶ 52, 56 St.Rep. 1078, ¶ 52. We have also held "there is no prevailing party where both parties gain a victory but also suffer a loss." *Parcel v. Myers* (1984), 214 Mont. 220, 224, 697 P.2d 89, 91-92.

¶61 In this case, the District Court held that "[n]either party is the prevailing party and each party shall pay his or its own costs and attorney's fees." Both parties here gain a victory but also suffer a loss. Kimble Properties received a favorable judgment on the promissory note, but lost on the issue of constructive fraud. Accordingly, we conclude that the District Court did not abuse its discretion when it held neither party was the prevailing party and did not award attorney fees.

¶62 We affirm in part and reverse in part the judgment of the District Court and remand to the District Court for proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ KARLA M. GRAY